112

### STATE ex BARTLETT, Prosecuting Attorney, Plaintiff v. SCHNEIDER, etc., as Board of Elections of Franklin County, Defendant.

Common Pleas Court, Franklin County.

No. 166929.  Decided February 17, 1944.

Ralph J. Bartlett, Prosecuting Attorney, Columbus, and Forrest F. Smith, Asst. Prosecuting Attorney, Columbus, for relator.

David B. Sharp, Asst. Prosecuting Attorney, Columbus, and Robert P. Barnhart, Asst. Prosecuting Attorney, Columbus, for defendants.

### OPINION

By KING, J.

Gentlemen, I have endeavored to follow carefully your discussion both pro and con of the legal proposition which has been here raised by the demurrer. The relator, who is the prosecuting attorney of this county, has instituted an action in mandamus wherein he seeks to compel this governmental agency, namely, the Board of Elections of Franklin County, to recognize as he claims by his mandamus proceeding, the right or privilege flowing to and on behalf of those who are affected by the action of the Board of Elections in dropping from the

registration list, that is, the list of registered electors or voters, those who are engaged in the military service of our country.

Counsel representing the respondents have filed to this action in mandamus a demurrer, thereby claiming that the facts stated in the petition are not sufficient in law to constitute a cause of action. In the last analysis, the demurrant bases his objection upon the proposition that the Soldiers and Sailors Relief Act is limited to relief of what he characterizes or claims to be purely and simply of a civil nature and does not include a political right, such as is here in question. The demurrant also in support of his contention that the demurrer should be sustained, properly advances the theory that the Board of Elections of this county has acted wholly and solely in accordance with the provisions of the statute in such cases made and provided. The statute in substance provides that after a certain interim or a certain lapse of time, if the right or privilege granted to certain persons has not been exercised, they shall be dropped from the list. Of course, the board has acted in accordance with the provisions of this statute.

That brings us to this fundamental and basic consideration of the discussion which has here taken place. Is the relief prayed for founded upon the provisions of the Soldiers and Sailors Relief Act solely, or is counsel for the respondent correct in saying that political rights are not in such act contemplated? The purpose of the Soldiers and Sailors Relief Act is quite obvious, quite manifest, and that is that during such an emergency, during a war in which our country is engaged and when so much is vitally at stake, those who respond to the challenge and to their country's call, should be protected in their rights. In other words, one who so responds should not be deprived of any right that would otherwise obtain to him, either flowing from the constitutional statutory enactments or from the common law.

Counsel agree that the Soldiers and Sailors Relief Act passed first by the Federal Congress was re-enacted in substance by our state General Assembly effective June 11, 1943, in order to make sure that such provisions with reference to the rights and privileges of soldiers and sailors would be enforceable within the state of Ohio. As it is to be noted that the right to vote, which we are discussing, is the subject matter of state legislation and not the subject of federal legislation. Is it limited to just civil rights as that expression is commonly understood relating to property rights? Is that all that it means? If it is, counsel is correct so far as the application to the question at hand of the Soldiers and Sailors Relief Act is concerned. If not, then we will go further.

I am constrained to believe that the civil rights as used and as contemplated is to be taken in its illimitable sense, that it contemplates civil and political; in fact, looking to the the purpose and the object sought to be accomplished for the benefit of the soldier boy, it would apply to any right that was jeopardized because of his involuntary absence in the armed service of his country. Why should it not contemplate political rights? I think you and I will agree upon a very casual reflection that a political right or privilege partakes after all of a duty and an obligation. These boys at the front are fighting, sacrificing and dying to preserve these rights which are so sacred to us especially in this country. A country· governed by a constitution and by laws. They are fighting to preserve all those rights that flow from constitutional government; and in a country such as ours, these rights and privileges and opportunities, which we enjoy, are brought to us by our dual form of government. Therefore, the exercise of a political right or privilege, or rather if we may put it the other way, the observance of such a duty and obligation is paramount. I believe that the act upon which this Board acted in dropping names from the list was one means of making the citizenry conscious of its political duty and obligation.

History records instances of where government has failed to be responsive to the interests and welfare of its citizenship, because the people failed to be conscious of their duty and responsibility, inconsiderate and indifferent, and those countries have decayed and are now only a memory. I say, therefore, that a political privilege or a political duty or responsibility is one that ought to be approached with all the sacredness of such a right. No government or society ought to fail in the appreciation of its duty and its obligation to the soldier who has exposed his life and his limb in defense of his country, its institutions, its flag and all that it symbolizes, and more especially is that true, or rather let me put it, we in this country can especially appreciate the significance of this statement. We are all free people, we are a government that has a constitution and Bill of Rights that defend our rights, and our privileges, and there is no dictator on earth that can deny it to us; and that is what these boys are fighting for.

Therefore, when we come to consider the services of those who are on the far-flung battlefields, it is easy for us to appreciate what was in the mind of the legislature, both your Federal and your State, when they undertook to protect the

soldier boy who was at the front, and hence we should give not a restricted construction but such a construction as would be just and carry into effect the objects and the purposes of this act as Mr. Bartlett, the prosecutor, has well said, we all agree with that, and there is none of us need make any apologies for the encouragement and inspiration that we all seek to give to these boys, your boy and my boy, who now is somewhere on some battle front in defense of the thing that gives to you and me life and existence and hope and inspiration. No, I don't believe that it is to be limited in its construction. The fact of the matter is, as I listen to the reading of it, I believe that the Act clearly and fairly gives such protection under proceedings or transactions by any governmental agency, and we, of course, agree that this is a governmental agency that wouldn't in the least restrict or interfere with a right or a privilege theretofore existing to a soldier boy. I think there is plenty of basis for that in the Soldiers and Sailors Relief Act, but when counsel was reading some of the decisions, are you limited to that? Suppose there was no enactment at all, could there yet be relief of such character to a soldier boy? I believe that there is from the common law. See opinion of Judge Hart in **State, ex v McCabe, 140 Oh St p. 135, p. 139.**

From the time of the decrees of Julius Caesar, we find that every safeguard, every protection was thrown around the soldier boy who was engaged in the defense of his country. This to which I bring your attention, of course, relates to a property right of a soldier, and that is the making of wills or language that would result in a formation of a trust governed by the intention of the soldier. Those were remedial acts on the part of the Roman judiciary when the pronouncement was made by the courts in that period to the effect that the intention of a soldier boy upon the field and engaged in the last struggle with reference to the disposition of his property, either real or personal, if it was scrolled upon the sands with the point of his sword or upon a scabbard or upon a shield would be carried into force and effect by the courts despite the fact that there existed a law outlining or defining the method and the manner to be pursued in the drafting of a will or the disposition of real or personal property, and yet the courts say that if this soldier boy, giving up his life in the struggle and in the contest to preserve all that is sacred to his government, if you can ascertain his intention, although it wasn't carried out in conformity with the provisions of the law, that intention of the soldier boy will be complied with. Yes, there

is a long history of the rights of soldiers and how diligently they have been guarded by the judiciary and by the legislatures.

The only question is how can ' this be accomplished? A great number have been dropped from the list, I know. Counsel has expressed the willingness of the Board to grant this privilege; they were following their plain duty as outlined by the statute, and I feel that this suit has been properly brought, so that they may know by judicial pronouncement their duty and their obligation.

I know there has been much said about this voting and it is being discussed now. The legislature, I am informed, will be called in session to enact legislation that will simplify this situation, if there needs to be any simplification, of the right. of the soldier boy to vote, not only in this country, but overseas.

Whether or not our analysis here made is correct that the rights of a soldier here in question are protected by either the provisions of the Soldiers and Sailors Relief Act of the General Assembly of Ohio or based upon the common law or justice, the question is decided in our opinion by the constitutional provision of the Oiho Constitution and the decisions of our Supreme Court in construing the provision of the Constitution applying to the right of elective franchise.

**Article V, Section 1, of the Ohio Constitution** provides:

"Every citizen of the United States, of the age of 21 years, who shall have been a resident of the state one year next preceding the election, and of the county, township or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections."

The Supreme Court of Ohio in the case of **Daggett v Hudson, 43 Oh St 548**, interprets this constitutional provision and in our opinion the law therein laid down is dispositive of the question here at issue.

"The registration act of May 4, 1885 (82 Ohio L. 232), relating to elections in Cincinnati and Cleveland, requiring registration in all cases as a condition to the right of suffrage in those cities, and allowing the voters only seven specified days within the year in which to register and correct the registration, which contains no provision for registration after the seven days (though five days thereafter intervene before elec-

tion day), and no regulation whereby those constitutionally qualified, may, upon proof of their qualifications, and a reasonable excuse for not registering in time, be allowed to vote, and where no other means are provided whereby persons necessarily absent at the time fixed for registration may have their names registered, is unreasonable, and has a direct tendency to impair the right of suffrage, and may disfranchise without their fault a large body of voters necessarily absent from the place of registry during the allotted time for registration, and is, therefore, unconstitutional and void."

The language of the decision in interpreting the right to vote as guaranteed by the constitutional provision clearly states that the General Assembly is without power to authorize the Board of Elections to disqualify from the privilege of voting persons who have failed to vote within a period of two years, without providing a means of preserving such right to those who have been involuntarily absent at the time of the registration.

This clearly brings the soldier boy within the protection here afforded as there is no question but at the time of voting he was involuntarily absent.

For the foregoing reasons, the demurrer is overruled and the peremptory writ allowed as prayed for. An entry may be drawn accordingly.